Mr. Patterson. Good morning. Good morning, Your Honors, and may it please the Court, Pete Patterson for the appellant. Acting at the core of its sovereign authority to manage the state's response to the pandemic, the state of Florida has determined that businesses in the state must serve all individuals regardless of whether they produce COVID-19 vaccine documentation. The District Court held that this likely violated the Constitution, but that was error for two reasons. First, the District Court held there's likely a First Amendment violation, but this statute regulates conduct, not speech. Norwegian remains free to say whatever it would like to say. All that it must do is provide service to individuals who do not provide COVID-19 vaccine document. Second, the District Court also invoked the dormant commerce doctrine, but here where the law advances legitimate important state interests, wholly disconnected from protectionism and even either intent or effect, there's no dormant commerce violation. Turning first more extensively to the First Amendment argument, again, this is conduct, not speech, and that, in fact, is a required result under both Supreme Court precedent and precedent from this Court. First, from the Supreme Court in Rumsfeld v. Fair, the Court held that a law requiring law schools to allow military recruiters on campus did not implicate the First Amendment because it only affected what the law schools must do, allow the recruiters on campus, not what they could say, and that is on all fours with this case where the Florida law only addresses what businesses must do, allow certain passengers or allow certain customers on their premises and provide them service versus what they may or may not say, and the same result. It's based entirely on what it's based entirely on what they on the documentation, isn't it? Is it not? The law is addressed at the documentation because that was the situation that was presented to the legislature in his cases like City of Renton and Williams-Julie say you can you can address the most specific problem, but that doesn't turn it into a First Amendment issue. Presumably, in all of these cases, for example, Walschlager, which is the 11th Circuit case, I was going to mention that said doctors can't discriminate against patients for gun ownership. This is different because the Florida statute allows discrimination against people who haven't been vaccinated for COVID. It doesn't do anything to protect against that. It just says that, you know, I mean, the cruise ship could prevent people from coming on board if they ask them, have you been vaccinated for COVID? And they said, no, there's nothing in the statute that prevents that, is there? No, they could do that. There's no indication that they would do that. So that being the case, then how does it protect for discrimination? How is it like Walschlager? Well, first, it protects from, well, in Walschlager, doctors could refuse service to individuals who were gun owners. They just, if they said we're going to serve you, then they couldn't discriminate against them by, you know, providing them bad appointment times or things like that. So the state can define the nature of the discrimination that is or is not allowed. And the nature of the discrimination here is the refusal to. Is the refusal, yeah, right. It's the conduct. And regard, it's the same. So the, it's an interesting first amendment argument where they say, well, the problem is that you're regulating too little speech apparently, like if you would have done more, maybe it wouldn't be a first amendment problem. But it would have been, if the statute had said you can't discriminate on the basis of vaccine status, that would still prevent them from not letting anybody on board who doesn't present a COVID-19 document. It would just restrict even more conduct. So that doesn't turn it from a, you know, non first amendment issue into a first amendment issue because the legislature focused on the vaccine documentation and form, but it's the form of the speech that you're objecting to that, that the statute is objecting to. We're not, the statute is not objecting to any speech. Norwegian can ask whatever it wants to ask. Customers can tell Norwegian whatever they want to tell them, including by giving them a vaccine document. The only conduct that is being restricted is Norwegian or any other business saying, no, you cannot be served here. So it is a regulation of conduct. Is your argument that, um, that Norwegian could ask the customer for proof of vaccination? Absolutely. They can ask, the customer can give it. The only thing that can't have or not give it, or not give it. The only thing that can't have it, if this customer says, no, I don't want to give that to you. They can't say you can't come on the ship. So that's the conduct that is being regulated is whether someone can come on the ship or not. And then the alternative Norwegian argues that this is a, an expressive conduct issue. But again, Rumsfeld provides the answer because there the Supreme Court said holding a recruiting event at a law school was not inherently expressive and running a cruise ship is no more inherently expressive than hosting a recruiting event. And Hurley is instructive on this point too, because there the Supreme Court said a parade was expressive and they contrasted that with a group of people just walking from point A to point B. Let me ask you a little bit about expressions, hair design, and Dana's railroad. So in that case, the, the, we basically said that it was a form of speech that was being regulated when, when the law said that you can't state, you can't state that you're getting, you can state that there's a discount for cash, but you can't state that there is a surplus charge for a credit card. Why is this not like that? Because there is nothing the business can say to condition service on COVID-19 vaccine documentation. In, in that case, the business could charge the exact same amount. It just depended on whether they called it a discount or a surcharge. Here, there is nothing Norwegian can do to say you can't get on our ship unless you give us a vaccine document. So there is conduct that they can't engage. That's why we're here. They want to engage in that conduct and they can't do it. So it is completely different than, than that, those cases, your honor. And conduct in, in, in expression, hair design is effectively the same. It's just the regulation of what you call it. Right, exactly. You can charge $10 and 30 cents or whatever it was in that case. It's just depend on what you call it here. There's nothing you can do to have a document mandate. And on the dormant commerce clause, happy to answer any additional questions on the first amendment, but let me ask you this. Sure. Just assume for purposes of this hypothetical that we find that it is speech. Yes. Then it seems like you have a problem. No, your honor. Cause for, for, as an initial matter, it is commercial speech. The only reason, how is it commercial speech though? I mean, it doesn't, it's not about a commercial transaction. The, the purpose that the cruise line has in doing this is to prevent the spread of COVID on, well, it's got multiple purposes to prevent the spread of COVID on its, on its, uh, ships to be able to, uh, provide certain services on board, et cetera. And those are related to things other than just commercial considerations. And it doesn't propose a transaction. Well, it is part of speech that proposes a transaction. It is a term and condition of a commercial transaction. They don't have a single case that says something that is a term and condition of a commercial transaction is not commercial speech in the case of Bulger, which is a Supreme court case held that purely informational mailings about contraceptives that, you know, barely even mentioned the product and Fox, they held that holding Tupperware parties where there was discussion of a lot. But that's different because that's about the product itself, right? I mean, like those kinds of cases, Coors versus Rubin, et cetera, you're talking about the product itself. That's what the speech is about. The product itself here, the speech is not about the product itself. It's about whether the customer is vaccinated or not. Right. Well, in, in Fox, there was not, they said that there were Tupperware parties, but they involved discussion of lots of other things about household management and all sorts of other things. And yet it was still commercial speech. And in terms of this being a business decision and at the PI argument, this is an essay 92. The court said, I understand that, but make no mistake about it. Mr. Del Rio's decision is a business decision and opposing counsel answered. Yes, this is a business decision that Norwegian has made that our business is going to be best served. If we have this requirement, even, even assuming just for the sake of the hypothetical again, that it is subject to the commercial speech doctrine, it still seems that you would have a problem to me anyway. No, I want to give you a chance to address that. Yes. We are at the core of the state's police power under cases like Jacobson to manage the response to the pandemic. And the court has decided this is important. We don't want to create two classes of citizens based on those who show COVID-19 vaccine documents and those who do not. And we want the economy to be, let me, let me just ask you about that because isn't, I mean, the point here is that the ship could deny passage anyway, if the customer were asked to the same question and said that he or she was not vaccinated, right? It could, but there is no the Florida schools vaccine mandate that is not accompanied with a document requirement. So that was what was being, the legislature was concerned with. Why is that a compelling interest that somebody shouldn't be quote discriminated against on the basis of, uh, the, of refusal to show vaccination status, if they're going to be able to be asked about it. Well, the compelling interest is both having the economy open, not having people carry around an extra document to get access to the economy, but also to protect the unvaccinated because the legislature made the reasonable judgment that if companies can't mandate a document because every vaccine requirement that on this record that apparently is known to man requires a document to back it up, that it is going to protect the unvaccinated because companies like Norwegian, they have not argued to that, that documents a private medical record. Yes. And it also was a private medical record that should not be required to be shown in order to obtain access to the economy. You wanted to address, I think the pike balancing test with dormant carbon scars real quickly, your honor, three points on that. First, once everybody agrees, pike applies, it's deferential. Once it's shown that there's a, uh, substantial state interest, plausibly advanced that is not connected to protectionism. That's basically the end of the analysis is a justice. Brennan said in footnote one of his castle concurrence. And that makes sense because it's aimed at rooting out protectionism, the dormant commerce doctrine. And here you've got a Florida company challenging a Florida law that it says going to impact the Florida economy. It simply is not a good fit. And moving on in pike, there's no clearly excessive burden on commerce because no one suggested a less burdensome alternative. Um, they've, why isn't it less burdensome just to not, to not have this statute? Well, because you have to, uh, suggest a less burdensome alternative of pursuing the state's interests, not abdication. As the Supreme court said in Minnesota versus Cloverleaf Creamery, where it was a similar arguments were made that either you could do something that burden commerce more, get rid of all non-returnable milk cartons, or you could just not pursue the policy. And the Supreme court said, no, we're not going to second guess the end. My question to you is why isn't it, why isn't it less burdensome? Well, go ahead. It's fine. Okay. So all he's going to say, ask the question before you finish. Um, what do we do with the kind of dueling 28 J letters on the impact of this on foreign, on Florida to Bermuda commerce and the vaccine mandates or lack of vaccine mandates that foreign countries may have and the cruise ships needing to match their entry requirements with exit requirements. Yes. So a few points on that, your honor. I mean, Norwegian and it's opening and it's brief said under, you could take judicial notice of these sorts of things. So we are just Virgin islands and, and, uh, the Bahamas, right. And you've asserted that we're just responding to you're, you're asserting those restrictions are no longer in place. They haven't really denied that. I think that's going to be most helped by you. You've asserted what your position, uh, we need to hear what their, their position about. Yeah. I mean, I think it washes out. Cause if you look at the record, that was before the district court, those things weren't in place. If you consider what's happened since then, those restrictions aren't in place. So it really, uh, should not make a difference for the court's purpose. I mean, this is a PI, right? So this is appeal from preliminary injunction. Is it possible that there could be future hearings where that actually got fleshed out? Yes, it's possible. Yeah. Okay. Thank you. You've saved three minutes. Mr. Schaffer. Good morning, chief judge prior. May it please the court, your honor, on behalf of Norwegian, I just want to set the scene. If I, if I may, I want to do one thing and that is set the record straight about this point. Yes. Cause you were pretty cagey in your response to that. And you said, even assuming, are you into that? All right. So what's your position that they, I mean, we've looked, I've looked at the public health, the public websites, the government websites. It looks like that, that that's not their requirement anymore. Chief judge prior. I don't mean to be cagey at all. Norwegian itself is dealing with these fluid. Sure. I understand. And so I don't want to represent something to the court that may be changing under, you don't deny it. Do you, I, my understanding is that the Virgin islands has relaxed, yes, but the Bahamas has not. My understanding is that the Bahamas as best we can tell the last communication that I can lay hands on says you, you not only have to have every passenger be vaccinated in order to disembark, but you need to have that in the manifest. You need to have that documented. That's the last word we've been able to find from the Bahamas. But to your question, judge Brasher, what the district court found on an undisputed record is that these were, there were myriad shifting requirements across all these foreign jurisdictions. And the one unifying feature of them was that they were focused on proof of vaccine documentation, just as the federal framework, which has become voluntary is focused on vaccination and being able to ensure that more than 95% of your passengers for purposes of the CDC. When you go to the 35th supplemental executive, well, no, no, no, no. The Bahamas travel health site, travel protocols, april 2nd, 2022. Um, looks to me like they're different from what you've this chief judge prior. That's the communications that my client has had from the Bahamas with their response. This was the sort of thing you said we could take judicial notice of it. If that's, if that's so, it seems to me we ought to be able to go to, to these public health websites and be able to, to take judicial notice of them. And, and chief judge prior, we went as recently as yesterday to the website. And at least what we saw on the website for the Bahamas seemed to confirm their requirement that there be, but not the virgin islands, not the virgin islands, you agree that if we go to the website, we can rely on what's there. Well, I think in these circumstances where things have been, where you've asked us to take judicial notice of it, chief judge prior, you may, if you, if you consider it clear enough for the court, but judicial notice today, you were the one that first asked us to do that. I mean, this is the frustrating thing about it to me. Well, I mean, I just want to know what, what it is I can take judicial notice of or not things that are clear to the court and undisputed, and I'm not able to judicial notice our way, but I'm trying to be honest with your honor and not provide a representation that I can't back up definitively, nevermind through the record, but through my best and she wouldn't have any problem with me going to their website and determining from that taking judicial notice of whatever is appropriate to take judicial notice of your honor is the presiding judge. I know better than to say that you shouldn't, I think it would be a questionable use of judicial notice because we have conflicting, even though you had first asked us to do it. And perhaps, perhaps you've judged prior. We thought things were clearer than they turn out to be, but because we wanted to have our best understanding for the court, we've dug in and I just cannot tell you any better than I have what the state of it should get to what you were going to say at the beginning, how to frame the case. Thank you. Actually, I'm sorry, before you do, regardless of whatever the current protocol is, I mean, it does seem that this is a pretty fluid situation that's constantly changing. And I mean, is that that's exactly what judge Williams found in August of 2021. She found that on an undisputed record, all these, these requirements were in flux, then they've remained in flux since they continue to have the one safe way to get passage to be proof of vaccine documentation from passengers, which is what Norwegian has been relying upon as the touchstone. One other point, if I may, chief judge prior, if you check docket 32, the plaintiffs of rather the defendant's preliminary injunction opposition to the district court, page 18, they effectively stipulated judge Brasher for purposes of the PI decision that yes, it was, you know, multiple foreign courts in which Norwegian sales were requiring proof of vaccination before passengers can enter without testing. So it was the one surefire way to get all your passengers off the boat, back on the boat, satisfying all the foreign jurisdictions they would pass through. So the burdens on interstate commerce and international commerce from not being able to verify vaccine documentation before passengers came aboard quite severe. Let me ask you this. In any case, is it accurate to say that if somebody does test positive for COVID while on board, they can't get off in these ports. That's my understanding. Okay. And, and is, was there also a factual finding or something in the record that indicates that people who are vaccinated are 80 to 90% less likely to transmit COVID to others? Yes. Judge Rosenbaum, it's, it's less likely to transmit, you're less likely to contract it from others. And if you get COVID and the symptoms are likely to be less severe. And so if that's the case, then it seems like it's logical that if people are vaccinated, that you are less likely to have people who are going to be stuck on the ship. And that also would be an interference with international commerce. Is that correct? That's correct. Judge Rosenbaum, unless people who are less likely to need ventilators and to require emergency treatment that could shut down and try our cruise lines, create risk for human health and safety, and potentially trigger a renewed shutdown of the cruise industry. Because those concerns are what led to all cruise ships being grounded as they were for many months until Norwegian was able to resume sailing. And if the cruise ships are grounded, then, I mean, it seems like that's an interference with international commerce. Of massive proportions, because these cruise ships uniquely move through interstate and international commerce like nothing else does. And so the as applied, what follows from the as applied dormant commerce clause challenge is simply that they need to be carved out from these extreme Florida burdens that are unique and peculiar to Florida and quite anomalous. They're not matched by anyone else. It's the classic fact pattern that the Supreme Court confronted in all of its seminal dormant commerce clause cases, cases like Bibb, cases like Castle, cases like Pike. But to travel to all these foreign ports, if they're right about the Bahamas. I'm sorry. But to travel to all these foreign ports, if they're right about the Bahamas, you can see that they are about the Virgin Islands, is satisfied by a negative test. Isn't that right? Chief Judge Pardo, that's true today, but not when the P.I. was granted in August of 2021. And even assuming it's still true and a negative test will satisfy things, there's a bigger problem at play here, which is if people are are more contagious when they have it or are more likely to get it because they haven't been vaccinated, you could have an outbreak at sea that could then prevent you from being able to stop at these ports altogether because no one would test negative and then you'd have an interference with commerce. That's exactly right, Judge Rosenbaum. That's empirically what happened with the cruise industry toward the outset of covid. And it's also the concern that Frank Del Rio speaks to in his declaration about getting local host populations sick where they have less health care infrastructure. And if you're doing that, you're not going to be invited to return to those ports no matter what. Because your competitors are complying with the Florida statute, right? I'm sorry? Your competitors are complying with the Florida statute? Chief Judge Pryor, you can ask Mr. Patterson that. My understanding is they've gotten the same exemption by grant of the state consistent with the P.I. At least those cruise lines that have wanted it are sailing the same way that I don't. I don't know the answer to that. I know of two or three or four that do. I don't know. I don't know. Yes or no. And you could, your client could sail from other ports. Well, but the declarations are clear about that. They have an entire infrastructure in Florida that is uniquely designed for Florida. And they have certain cruise ships that leave only from Florida certain times of year. So what we're talking about is a massive shift in commerce. That's exactly the sort of balkanism. Not protectionism. Balkanization, Chief Judge Pryor. Balkanization, which is a recurring concern of the Dormant Commerce Clause cases up through today. And I think one that this court has credited. Why don't they have substantial interest in, I mean, look, I'll just speak for myself. I don't see how this is a regulation of speech. I think you just lose under that. I can only speak for myself about that. But it seems to me under the pipe balancing, they have substantial interest in protecting their customers from discrimination for refusing to provide a private medical record. And if that's their substantial interest, you've got a hard road to hoe. Let me take those in turn, if I may, okay? Let me take one minute to try to persuade you that this is a speech case. And it's just likelihood of success. I mean, look, to be fair, Walsh-Lager, I mean, it looks like you lose on that. I know enough to know a brick wall when I'm confronting it, but I rest on our papers on this, Chief Judge Pryor. I've read your papers. Okay. But I want to, let me say one thing. It is clearly a content-based regulation. It is triggered by the content of specific expression. You can ask them for their, you can ask them if they have one. You can ask them for that. You can ask for it. And you just can't refuse to let them board. We can demand medical documentation of every kind. We can demand vaccination documentation as the state does for schools. Yeah, you can ask them about this. It's just this particular subject matter, this life and death information and the truthful conveyance of it. So even if you were to treat this, if you were persuaded that this is any kind of a first amendment issue and you analyzed it in terms of commercial speech, as my friends for the other side argue in the alternative, this is the first government regulation that is banning truthful speech. And it is protecting the lie by the person who says, yes, I've been vaccinated, but they in fact have not. That's the only beneficiary of this law. And if you shift to the dormant commerce clause and you want to analyze the state interest in this, I just don't think that that is a weighty state interest. And if it's an interest in medical privacy, that interest is not being advanced either because the same information, have you been vaccinated or not? Cruise lines, as you noted, are entitled to obtain it. They can publicize it. They can broadcast it. Before we succeeded in this challenge, other cruise lines were parading the unvaccinated status of certain passengers in front of all of the cruise ship. And there's no restriction on that. And it could be put on websites and it could be broadcast. So it's very, very difficult for us to understand why Judge Williams should have provided more credit, more weight to these states' interests that really on this record are illusory. And you can look at her analysis and it's in the record appendix 520 to 528, where she explains why these state interests do not withstand scrutiny. And for the dormant commerce clause, she returns to that, but also explains why there's an obvious less restriction. Let me ask you this, could the state of Florida ban a business from requiring that its customers produce proof of nationality or get granting service? Prove to me you're a citizen or I won't grant you service. Well, Your Honor. Would they do that? I'd reserve rights potentially to bring a challenge. It would be a tougher challenge for us. But here's what they could not do, prove to us you're not a citizen of Russia. Well, could they single it out that way? Could they say we ban insurance companies from requiring proof of pre-existing medical, lack of pre-existing medical conditions? They can say that as part of a restriction on conduct, because they're saying we're not allowing you to account for that at all. If they simply, if they targeted this, we, we, we, we, yeah, but only the speech we want, we want proof. We want to met your medical record that, that proves that you don't have certain pre-existing medical condition. Could they ban insurance companies from requiring that of customers? If it's in furtherance of a larger policy that says it is verboden to discriminate this, which is categorically different, respectfully, seems to me exactly the same, but can I explain why I don't think it is? Okay. If Mr. Patterson articulates the anti-discrimination rationale, it's that people who do not have vaccines should not be discriminated against. There is no justification to be found anywhere for why people who don't have I think the rationale is people who refuse to show you a private medical record should not be discriminated against. They don't get, but it's not those people, Chief Judge Breyer, because if you ask the status of pregnant women on board, there's nothing that says you can't demand notes as Norwegian and other. The discrimination is people who refuse to show this private medical record. And that to me is another way of saying that it is content-based discrimination because there's no, there's no non-content-based, non-expressive rationale for that. And to take expression hair design and Dana, I think it's Dana Railroad, but for those cases, Your Honor, there, as you were saying, the same conduct you could do just in a different form through a insurance company said we don't want, we want to ban the custom of you. If the state wants to ban the insurance companies from requiring proof of a lack of preexisting medical condition of cancer or breast cancer, we can't do that. If it's content-based, if it's in furtherance of a larger policy that is principled and not specific to that subject matter, then I think they would be able to do that. Uh, and there again, it's not the, it's only the truthful conveyance that's being banned here. The lie can be told, the lie can be requested. And the only person who's benefiting is the one who wants to lie orally and not be put to the test in terms of the diet. I've never taken a cruise and I would want, I would want the customers vaccinated if I, if I boarded the ship, but it just seems, you know, the problem I'm having is with what the law says. And then your honor, you have, look, it's all about likelihood of success on the record as it closed in August of 2021, any close calls under Ashcroft go in favor of the preliminary injunction that judge Williams granted narrow as applied on the record before her different result might follow from a full record that will still be made on route to final judgment. And under the dormant commerce clause, chief judge prior, the law on that is stipulated as to pike balancing. The burdens are stipulated. Yeah. They've got a substantial interest in protecting their, their citizens from economic discrimination, from the refusal to provide a private medical record. And my respectful submission on that is there's no legislative record. There are no findings that say that it doesn't square with other state policies. And there's no explanation. Chief judge prior, you won't find it anywhere for why the state didn't simply exempt cruise lines from this law, just like it exempted healthcare providers. And of course, cruise lines among the many things that they're doing as passengers go from port to port amidst COVID-19 is deal with their health needs and make sure that they get health treatment. If judge Rosenbaum they're contracting COVID-19, let me ask you a question about pike balancing. Um, so this is an as applied challenge on the dormant commerce clause. When we're doing the pike balancing, do we look at the burden specifically to the plaintiff who is challenging? Um, or do we look at burdens to economic activity general, and then on the same side with the judge Brasher, it's as applied. It can be for the specific challenger. It can be for the industry. I'd point you to the Supreme court's decision in pike, which was about a specific grower of cantaloupes. I'd point you to the eighth circuits decision in pioneer, which is about a specific military lender. But also that's how judge Williams analyzed it when she was explaining that there's a less restrictive alternative here that the state can answer. And my friends for the other side have not denied this judge Brasher. They've not denied what's the less restrictive alternative to carve out the cruise industry from the floor does not apply it to the which are uniquely, uniquely interstate and international. And that's what's confusing to me is that if, if you're looking at the specific burdens on the cruise industry, then it seems like you'd have to look at the benefits of the group of the state's interests specifically as applying it to the cruise industry. Um, but if you're looking at the burdens overall, then it looks like you'd have to look at the benefits overall. I do agree with you judge Brasher. I think it'd be as applied as you look at the benefits of the burdens for this specific industry. The legislature made it easier for you. They specifically contemplated a carve out for the cruise industry. They inexplicably, there's no evidence, no articulation of why they didn't carve it out. It would have neatly fit alongside healthcare providers who are carved out of the law. So, you know, there can be that sort of a carve out that brings us to the less restrictive alternative on the ad supply challenge. Thank you, your honors. Thank you, Mr shape. Um, Mr Patterson, you saved three minutes. Uh, yes, just a few points, your honors. First on the issue of the Bahamas, we cited the official document putting the restriction in place again regardless. I mean, if if the ship can't dock there in the first place because there is a covid outbreak, how does that not interfere with international commerce? Well, your honor, the cruise industry itself through the C. L. I. A. Of which Norwegian is on the leadership told the C. D. C. Cruises can sail safely with only recommending vaccination. So that's the cruise industry's judgment itself. That's an appendix 3 46. So, you know, this question even so, I mean, there have been incidents. Um, you know, since the cruise ships have gone back, there have been incidents where I know there was one, you know, at least in December, January, where an entire cruise ship, uh, basically just had to stay at sea for several days, couldn't dock in any ports. So, I mean, doesn't that interfere with international commerce? And the reason was because there was a covid outbreak on board. Well, I don't see how you say that's clearly excessive in relation to the state's interest when it's what the cruise industry itself has said to the C. D. C. Should be allowed to happen that we should only recommend vaccination. So I just respectfully don't see how you can use that to second guess florida's judgment. And again, it's what we said under pike, it's whether it's clearly excessive with respect to the interest. So are there less burdensome alternatives? And it's not under again, Minnesota versus clover leaf creamery. Your alternatives cannot just be abdicate or something more burdensome. So there aren't any less burdensome alternatives that have been proposed. What about your friend's argument that carving out the cruise industry would be less burdensome? That would be less burdensome, but that would not be advancing. It's not a less burdensome way to advance the state, state's interest. It's giving up on that interest. Let me let me ask you a question about that. I I don't understand that. But um, it seems like you're arguing that there are benefits to applying this law to the cruise industry. And the cruise industry is saying, uh, we're not going to be able to take cruises if this law applies to us, right? Um, what do you say about that? If we're looking specifically to the cruise industry, how do the benefits of applying it outweigh the burdens on the industry of applying it to the cruise industry specifically? Okay. A few points on that. Your honor. First, with respect to the burdens, there's no, the evidence is not that they cannot cruise the declaration. The district court said there are places we want to go that require vaccination or testing. They say we already require a test for everybody. The district court found that the british version islands required testing even for people that were vaccinated. So they clearly can handle the testing. And plus the vast majority of the people on board are going to be vaccinated. They certified to the CDC, we're going to meet the vaccine alternative while complying with florida's law. That was their certification. And plus the industry told the CDC, the vast majority of the people are going to be vaccinated regardless. And then with respect to the other ports, I would just say at appendix two 88, um, what a Norwegian ceo said that if we can't operate in the state of florida, then there are other states that we do operate from and we can operate from the caribbean. So that just goes to show if there's any burden on commerce where that's going to be a felt is in the state of florida. So these other, they can sail other places. So it's just an odd dormant commerce challenge to say that we've got this florida company claiming harm to the florida economy and that's somehow a dormant commerce problem. So thank you, your honor. And there are no further questions. Okay, we're in recess until tomorrow. Thank you.